# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THOMAS ALLEN TWOBABIES,      )
                                           )
         **Petitioner,**              )
                                           )
**v.**                                        )     **Case No. CIV-14-241-R**
                                           )
**ROBERT PATTON, Director,**[1]    )
                                           )
         **Respondent.**           )

## REPORT AND RECOMMENDATION

Petitioner Thomas Allen Twobabies, a state prisoner appearing pro se, has filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his criminal conviction by the State of Oklahoma. *See* Doc. No. 1. Respondent, ODOC Director Robert Patton, filed a Response to Petition for Writ of Habeas Corpus, and Petitioner replied. *See* Doc. Nos. 9, 14. This action has been referred by United States District Judge David L. Russell to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636(b). As outlined herein, the undersigned recommends that the Petition be DENIED.

---

[1] Because Petitioner is incarcerated at a privately operated correctional facility, the current Director of the Oklahoma Department of Corrections ("ODOC"), Robert Patton, is hereby substituted as Respondent in this proceeding. *See* R. 2(a), 12, Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d), 81(a)(4); *Director's Office*, Okla. Dep't of Corr., http://www.ok.gov/doc/About_Us/Director's_Office (last visited July 30, 2015).

## I.      Relevant Case History and Issues Presented

On the evening of November 19, 2010, Petitioner and a group of acquaintances were drinking alcohol and listening to music in front of Petitioner's mother's house in El Reno, Oklahoma. There was an altercation, during which a twenty-four-year-old man named Niehhi Hamilton was stabbed to death in the street. Pet'r's OCCA Br. (Doc. No. 9-1) at 10, 12, 15-17;[2] Vol. II Trial Tr. 7, 8, 54-64; Vol. III Trial Tr. 121, 150 (*State v. Twobabies*, No. CF-2010-500 (Can. Cnty. Dist. Ct. Jan. 9-13, 2012)) (Doc. No. 11) (conventionally filed).

Multiple eyewitnesses identified Petitioner to law enforcement authorities as one of the individuals involved in the altercation. The State of Oklahoma charged Petitioner with the felony crime of Murder in the First Degree. *See* Original Record ("OR") 193-94 (Doc. No. 11); Vol. II Trial Tr. 109, 233, 273; Vol. IV Trial Tr. 76-79, 88. On January 13, 2012, after a jury trial in the District Court of Canadian County, Petitioner was convicted of one count of Murder in the First Degree in violation of Title 21, Section 701.7(A) of the Oklahoma Statutes. Vol. V Trial Tr. 146-47; OR 193, 593-94. On March 20, 2012, Petitioner was sentenced to life imprisonment without the possibility of parole, in accordance with the jury's recommendation. OR 593, 645-48; Sent'g Tr. 4 (Mar. 20, 2012) (Doc. No. 11).

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). OR 640; *see Twobabies v. State*, No. F-2012-264 (Okla.

---

[2] Citations to filings in this Court use the page numbers assigned by the Court's electronic filing system.

Crim. App. filed Mar. 26, 2012).[3]  On May 20, 2013, the OCCA affirmed Petitioner's

conviction and sentence.  OCCA Op., No. F-2012-264 (Doc. No. 9-3).

Petitioner then filed this federal habeas action, in which he raises seven grounds for

relief.  *See* Pet. (Doc. No. 1) at 6-26; Pet'r's Reply (Doc. No. 14) at 2-13.  Respondent

concedes that Petitioner's claims are timely and that Petitioner exhausted his state-court

remedies with respect to the grounds raised in the Petition.  *See* Resp't's Resp. (Doc. No.

9) at 2.

## II.    The Standard of Review

The Tenth Circuit has summarized the standard of review for evaluating state-

court determinations that have been challenged in federal court through a 28 U.S.C.

§ 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996
> (AEDPA), we must apply a highly deferential standard in § 2254
> proceedings, one that demands that state-court decisions be given the
> benefit of the doubt.  If a claim has been "adjudicated on the merits in State
> court proceedings," we may not grant relief under § 2254 unless the state-
> court decision "was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the
> United States" or "was based on an unreasonable determination of the facts
> in light of the evidence presented in the State court proceeding."  28 U.S.C.
> § 2254(d)(1), (2).    The phrase "clearly established Federal law, as
> determined by the Supreme Court of the United States," *id.* § 2254(d)(1),
> refers to the holdings, as opposed to the dicta, of the Court's decisions as of
> the time of the relevant state-court decision.
>
> Under the "contrary to" clause of § 2254(d)(1), we may grant relief
> only if the state court arrives at a conclusion opposite to that reached by the

---

[3] The dockets and some filings for *State v. Twobabies*, No. CF-2010-500 (Canadian Cnty.
Dist. Ct. filed Dec. 1, 2010), and *Twobabies v. State*, No. F-2012-264 (Okla. Crim. App.
filed Mar. 26, 2012), are publicly available through http://www.oscn.net.

Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted).

Pursuant to AEDPA, factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The standard for relief prescribed by AEDPA is high:

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### III.    Analysis

As grounds for each of his federal habeas claims, Petitioner restates the propositions of error raised in his brief on direct appeal (Pet'r's OCCA Br. (Doc. No. 9-1) at 21-59). *See* Pet. at 6-26. The undersigned has considered this brief together with the Petition and has liberally construed all of Petitioner's pro se filings as part of a careful review of "the facts and the pleadings" in order "to ascertain what occurred in prior state

proceedings and the true nature of Petitioner's claims" and to ensure "substantial justice." *See Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

## A.  Ground One: Petitioner's Post-Arrest Statements

### 1)  Background

After Petitioner was taken into custody on November 22, 2010, he made both oral and written statements to the El Reno Police Department.  Pet. at 7; *see* Trial Ct.'s Exs. 1, 2 (D. Parker Narrative Report; T. Twobabies Witness Statement) (Doc. No. 11).  Prior to trial, the State identified on its witness list for trial Dennis Parker, a detective for the El Reno Police Department who had interviewed Petitioner at the time of his arrest.  OR 190E-190F.  The State's witness list stated that Detective Parker "will . . . testify . . . about . . . his interview of Thomas Twobabies on November 22, 2010, and the handwritten statement made by Twobabies."  OR 190F.  Petitioner unsuccessfully sought suppression of these in-custody statements ("the Statements").  Pet. at 7; OR 112-14, 225-26; Vol. II Trial Tr. 5.  Petitioner also sought redaction of the Statements if they were introduced into evidence.  OR 328-29; Vol. I Trial Tr. 3; Vol. IV Trial Tr. 215; Pet. at 7.  On the second day of trial, defense counsel requested and was granted "a continu[]ing objection to any testimony about the statements that we've objected to earlier, prior to trial."  Vol. II Trial Tr. 5.

On the fourth day of trial, the State called Detective Parker as a witness but did not question Detective Parker regarding Petitioner's Statements, or offer those Statements into evidence, during direct examination.  Vol. IV Trial Tr. 140-88; Pet. at 8.  At the

close of Detective Parker's direct examination, the following exchange occurred at the bench:

> [DEFENSE]: Your Honor, if—and maybe this is more of a question than anything else, but this is a witness that we had expected to also testify regarding statements that our client made while in custody. Is this witness going to be recalled or is another witness going to be called or has the State decided not to admit these or try to admit those statements?
>
> . . . .
>
> [STATE]: I'm not seeking to introduce them.

Vol. IV Trial Tr. 188. Following a short recess, Petitioner's counsel proceeded to cross-examine Detective Parker. Vol. IV Trial Tr. 190-209. When cross-examination was concluded, Petitioner's counsel was granted his request that Detective Parker be released subject to recall. Vol. IV Trial Tr. 210. In another bench conference that day, the defense stated that it was "stunned" that the State had decided not to introduce Petitioner's statements and was granted an overnight recess. Vol. IV Trial Tr. 215-17 ("[W]e asked for [our last break] because we were stunned, stunned, that the State, who has for a year now been fighting for the admissibility of Mr. Twobabies' statement—we have been fighting against it, and we prepared our entire case around that coming in since you ordered that it's admissible. And now the State has decided, Oh, we're just not going to put it in.").

Later that same day, the State filed a motion in limine seeking to prohibit Petitioner from eliciting testimony, producing evidence, or otherwise referencing "the extrajudicial statements made by the Defendant concerning the events surrounding the stabbing death of Niehhi Hamilton," on the grounds that such testimony or evidence

constitutes inadmissible hearsay.  Pet. at 8; OR 445-49 (citing *State v. Palmer*, 57 So. 3d 1099 (La. Ct. App. 2011); *Phillips v. State*, 705 S.E.2d 287 (Ga. Ct. App. 2010)).  The next morning, on the fifth day of trial, the trial court heard argument on the motion in limine outside the presence of the jury.  Vol. V Trial Tr. 3-31.  The trial court granted the State's motion in limine and denied Petitioner's motion to dismiss the case based upon the State's allegedly unfair actions and prosecutorial misconduct.  Vol. V Trial Tr. 30-31. The defense did not recall Detective Parker as a witness.  Detective Parker's written report and Petitioner's in-custody written statement were proffered by the defense for purpose of preservation of the record but not published to the jury.  Vol. V Trial Tr. 97-98; *see* Trial Ct.'s Exs. 1, 2.

2) Appeal

Petitioner asserts, as he did on direct appeal, that the State's actions amounted to prosecutorial misconduct and that the trial court erred in granting the State's motion in limine.  Pet. at 6-10; Pet'r's OCCA Br. at 21-31.  The OCCA rejected this claim on the merits:

> In his first proposition, Twobabies claims he was surprised and suffered prejudice because the State did not introduce evidence of his statements to the police.  He claims that up until trial, the State, by all indications and actions, showed that they intended to introduce the statements in their case in chief.  He claims that his defense of voluntary intoxication was predicated on the State introducing the statement.

> Predictably, none of the cases cited by Appellant are on point. Appellant has cited no cases that hold that the State must present, at trial, all of the evidence it had earlier indicated it intended to introduce.  In fact, just the opposite is true.  The State is not required to call all of the witnesses it endorses.  *See Duckett v. State*, 1995 OK CR 61, ¶ 14, 919 P.2d 7, 14; *Dennis v. State*, 1994 OK CR 34, ¶[¶] 6-8, 879 P.2d 1227, 1230.

Further, Appellant admits that the rules of evidence precluded him from introducing his own, self-serving, out of court statements. He claims that the prosecutor's conduct was equivalent to a prejudicial change in the State's theory of guilt, because the statement contained Twobabies['] only evidence of a defense of voluntary intoxication and self-defense.

Unfortunately and ill advisedly, Twobabies assumed the State would provide his defense, so that he would not be required to produce any evidence of a defense during his case in chief. When the assumption was not met, he claims he was left with no alternative defense strategy, because counsel had not prepared for this turn of events. This is not the case. Twobabies was always available to testify in his own behalf and present his defense. Even on appeal, however, Twobabies does not claim that he would have testified in order to overcome the poor assumption.

Essentially, Appellant complains that he was denied his right to present a complete defense because his, largely self-serving, statement was inadmissible in his case in chief. His right to present a complete defense ran headlong into his right not to become a witness against himself. Appellant's strategy was to rely on the assumption that the State would introduce the statement, and then he would not have to testify and tell his story at trial. When the statement was not introduced, he, obviously, chose not to testify because the jury would have been exposed to his prior felony convictions.

While the State is not entitled to surprise a defendant by creating a "situation in which a party is unexpectedly placed without a default on his part . . . ," such is not the case here. Appellant had a default. His default is to testify and tell his side of the story in open court just as he told it to the police after he was arrested. He chose, as a strategy, not to testify. Appellant cannot claim surprise because the State decides to forgo introducing certain evidence, especially when the theory of guilt is unchanged. Appellant had a means by which he could have presented this information to the jury. This proposition fails to provide any basis for relief in this case.

OCCA Op. at 3-4 (footnote omitted).

3) Analysis

Respondent asserts that Ground One "is an issue of state law" and therefore is not cognizable in this habeas proceeding. Resp't's Resp. at 4. This response fails to recognize that Petitioner is arguing, as he also did to the OCCA, that the State's tactics

amounted to prosecutorial misconduct, which coupled with the trial court's refusal to allow Petitioner to introduce the in-custody statements, resulted in a deprivation of Petitioner's right to present a complete defense under the Sixth and Fourteenth Amendments. *See* Pet. at 6-10; Pet'r's OCCA Br. at 21-31; Pet'r's Reply at 2-11; Pet'r's OCCA Reply (Doc. No. 9-1) at 65-69. These are specific claims of "violation of the Constitution" long recognized in federal habeas actions. *See* 28 U.S.C. § 2254(a); *see, e.g.*, *Darden v. Wainwright*, 477 U.S. 168 (1986); *Crane v. Kentucky*, 476 U.S. 683 (1986). Petitioner raises a cognizable (though ultimately meritless) federal habeas claim in Ground One, and the undersigned analyzes the OCCA decision thereon with the deference mandated by AEDPA. *See Fairchild v. Trammell*, 784 F.3d 702, 711-12 (10th Cir. 2015) ("'When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" (quoting *Richter*, 562 U.S. at 99)); *cf. id.* at 711 ("It is not necessary that the state court cite, or even be aware of, applicable Supreme Court decisions, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

On federal habeas review, this Court considers whether the alleged prosecutorial misconduct deprived the Petitioner of a specific constitutional right or rendered the entire trial fundamentally unfair:

> Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the [conduct] sufficiently infected the trial . . . to make it fundamentally unfair, and, therefore, a denial of due process.

Nonetheless, when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.

*Dodd*, 753 F.3d at 990 (omission in original) (citation and internal quotation marks omitted). When the invasion of a specific constitutional right is alleged, the Court reviews the harmfulness of the error using the "substantial and injurious effect" standard outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009).

Here, Petitioner alleges the violation of his specific right to present a complete defense. With respect to this claimed right, the Tenth Circuit has explained:

Defendant argues that the denial of his constitutional claim [of denial of his right to present a complete defense] was contrary to or an unreasonable application of clearly established law set forth in a number of Supreme Court precedents. Two statements by the Court are probably the most helpful to his position. The first is: "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane*[, 476 U.S. at 690] (even after trial court had decided that confession was admissible, defendant was constitutionally entitled to put on evidence of circumstances of confession to show that it was unreliable) (citations and internal quotation marks omitted). The second is: "Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (Constitution did not necessarily require admission of evidence of prior sexual relationship between rape victim and defendant when defense did not comply with requirement of notice to prosecution) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987) (rejecting per se rule excluding hypnotically refreshed testimony when applied to defendant's own testimony)).

At the same time, however, the Supreme Court has never questioned the traditional reasons for excluding evidence that may have some

relevance. The formulation in Federal Rule of Evidence 403 sets them forth as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

*Dodd*, 753 F.3d at 985 (citations omitted).

In *Dodd*, the habeas petitioner argued "that he was denied his constitutional right to present a complete defense when the trial court excluded evidence that somebody else had committed the [charged] murders." *See id.* at 983-89. The OCCA rejected the claim on the merits, and the Tenth Circuit found that the state court's decision was not contrary to or an unreasonable application of clearly established law. *See id.* at 984-89. Here, likewise, Petitioner's argument that the trial court's exclusion of the Statements amounted to "constitutional error," and that the OCCA's determination cannot survive scrutiny under 28 U.S.C. § 2254(d)(1), is untenable.

"Only rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013). In *Dodd*, the Tenth Circuit noted examples where such a violation had been found: "the state court either had provided no rationale for the exclusion, could not defend an absurd rule, or had failed to examine the reliability of the specific evidence in that case." *Dodd*, 753 F.3d at 987 (citations omitted). No such circumstances are present here.

Petitioner does not dispute that his in-custody, out-of-court statements constituted hearsay that was presumptively inadmissible under the Oklahoma evidence code. *See*

Pet'r's OCCA Br. at 25, 30; Okla. Stat. tit. 12, §§ 2801, 2802; *cf. Dodd*, 753 F.3d at 988 (finding that OCCA's determination did not violate § 2254(d)(1) where OCCA did not apply the state evidentiary rule "mechanistically or inflexibly"). The State indisputably advanced a "'rational justification'" for the exclusion of the Statements in its motion in limine, and "there were rational grounds for exclusion." *See Dodd*, 753 F.3d at 987 (quoting *Crane*, 476 U.S. at 691); OR 445-49; Pet'r's OCCA Br. at 25, 30; Vol. V Trial Tr. 3-6, 13-20, 26-28, 30-31. Nor does Petitioner argue that Oklahoma's hearsay statutes and jurisprudence are facially unconstitutional or improper. *See Dodd*, 753 F.3d at 986, 987 (discussing *Washington v. Texas*, 388 U.S. 14 (1967), as an instance where the Supreme Court found the criminal defendant's right to present a complete defense was violated by an "absurd" state evidentiary rule that "'could not be rationally defended'" (quoting *Jackson*, 133 S. Ct. at 1992)).

Rather than providing "no rationale," the OCCA's rejection of Petitioner's Ground One included a thorough examination of the hearsay nature of the excluded evidence and the lack of any authority requiring the State to introduce the Statements. *See* OCCA Op. at 3-4. While the State's notification on day four of trial came as a surprise to Petitioner, he was permitted to delay the continuation of his presentation of evidence until the following day. As explained by the OCCA, Petitioner could have presented evidence of his defenses by testifying to the same facts himself. OCCA Op. at 4. Petitioner does not dispute that he had this option available. *See* Pet'r's OCCA Br. at 23-24 (Petitioner asserting that the State "knew that there was a grave disincentive for [Petitioner] to testify" on account of his prior robbery conviction).

In addition, admission of the Statements would not, "in itself," "have established the defendant's innocence" to the charged offense.  *See Dodd*, 753 F.3d at 987.  In the Statements, Petitioner described some facts (e.g., that Petitioner does not remember what happened after he took a knife from Niehhi Hamilton) that are arguably relevant to defenses of voluntary intoxication and self-defense, but these facts fall far short of establishing either of those defenses.  *See* Trial Ct.'s Exs. 1, 2; *Dodd*, 753 F.3d at 987.  Aside from whether the jury would fully credit Petitioner's lack of memory, Petitioner's acknowledgement that he took a knife from Mr. Hamilton could reasonably be viewed as inconsistent with these defenses.

The Supreme Court has expressed its "reluctance" toward attempts "to impose constitutional constraints on ordinary evidentiary rulings by state trial courts," explaining:

> In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence.  As we reaffirmed earlier this Term, the Constitution leaves to the judges who must make these decisions "wide latitude" to exclude evidence that is "repetitive . . . , only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues."  Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted.

*Crane*, 476 U.S. at 689-90 (alterations in original) (citation omitted).  In view of these principles, and those further elaborated in *Dodd*, Petitioner cannot show that the State's conduct and the alleged constitutional error in the trial court deprived him of his right to present a complete defense or had a "substantial and injurious effect" on the jury's

verdict.  *See Matthews*, 577 F.3d at 1186.  And Petitioner has not shown that the OCCA's determination was "irrational" or contradicted or unreasonably applied clear Supreme Court precedent.  *See Dodd*, 753 F.3d at 987; 28 U.S.C. § 2254(d)(1).  Relief should be denied on Ground One.

### B.  Ground Two: Cross-Examination of Alana Robin Pedro

The Sixth Amendment provides that a criminal defendant has the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In Ground Two, Petitioner argues that the trial court violated his Sixth Amendment Confrontation Clause rights[4] by denying Petitioner's counsel leave to cross-examine a witness named Alana Robin Pedro regarding threats made against Ms. Pedro by the family of Niehhi Hamilton. Pet. at 10-14; Pet'r's OCCA Br. at 31-39.

The State again responds that Petitioner is raising a claim of only state rather than federal law.  The undersigned disagrees.  Petitioner relied upon Sixth Amendment Confrontation Clause argument and authority before the OCCA and does so again in this Court.  *See* Resp't's Resp. at 8-9; Pet'r's OCCA Br. at 31, 32-33; Pet. at 6.  Further, the OCCA specifically clarified in a later order that it had addressed (and rejected)

---

[4] Petitioner also cites the Fourteenth Amendment but does not raise a separate due process claim.  *See* Pet. at 10-14.  To any extent that the Petition alleges an unconstitutional deprivation of due process arose from the trial court's restriction of Ms. Pedro's cross-examination, Petitioner's inability to establish a Sixth Amendment violation (described in main text) likewise demonstrates that Petitioner cannot show that the state court's alleged error was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration and internal quotation marks omitted).

Petitioner's Sixth Amendment Confrontation Clause claim on direct appeal. *See* OCCA Order Denying Rehearing, *Twobabies v. State*, No. F-2012-264 (Okla. Crim. App. June 14, 2013) (order).

1) Background

On the third day of trial, the State called Ms. Pedro, who was Petitioner's girlfriend at the time of the murder and was present at the scene of the crime, to testify. Vol. III Trial Tr. 171-295. Ms. Pedro had proved a difficult witness to secure: her appearance at the trial had been uncertain and was obtained through the State's use of two material witness arrest warrants. *See* OR 28-29, 46-47, 72-75, 137-38, 182-85, 256, 266-70. Prior to trial, Petitioner filed a motion for specific discovery, requesting that the State be ordered to provide more information about Ms. Pedro's expected testimony. OR 324-27. During a break on the second day of testimony, the trial court heard argument on Petitioner's motion and request to interview Ms. Pedro prior to her taking the stand. Vol. II Trial Tr. 40-52. The State denied withholding any information regarding Ms. Pedro's expected testimony and noted that regardless of defense counsel's efforts to interview Ms. Pedro, the State could not compel Ms. Pedro to speak to defense counsel outside of trial. Vol. II Trial Tr. 43-46, 47-48, 50. The State additionally argued that Petitioner could have himself served Ms. Pedro with a subpoena to testify, but had not done so. Vol. II Trial Tr. 51. The trial court refused to order Ms. Pedro to talk to defense counsel but stated that if Ms. Pedro was willing to talk, they could visit during a break in the trial proceeding. Vol. II Trial Tr. 51-52.

During her cross-examination by Petitioner's counsel, Ms. Pedro testified that she spoke with police the day after the attack on Mr. Hamilton:

> [DEFENSE]: The police officers came?
>
> [MS. PEDRO]: I went to my dad's and they came.
>
> [DEFENSE]: They came to your dad's house. And then they said you need to come talk to us?
>
> [MS. PEDRO]: Yes.
>
> [DEFENSE]: And they took you to the police station?
>
> [MS. PEDRO]: Yes.
>
> [DEFENSE]: And did you talk to them?
>
> [MS. PEDRO]: Yes.
>
> [DEFENSE]: And were you scared?
>
> [MS. PEDRO]: Yes.
>
> [DEFENSE]: And you didn't want to testify?
>
> [MS. PEDRO]: No.
>
> [DEFENSE]: Okay. Didn't want to talk to them?
>
> [MS. PEDRO]: No.
>
> [DEFENSE]: And you had been told from Niehhi's family, they—his side of the family, they have made threats to you; is that right?
>
> [MS. PEDRO]: Yes.
>
> [DEFENSE]: Can you tell me about Niehhi's family, the threats they have made to you?
>
> [STATE]: Your Honor, I'm going to object.
>
> [TRIAL COURT]: Counsel, I'm going to sustain that objection at this point in time.
>
> [DEFENSE]: Okay. But you've been scared?
>
> [MS. PEDRO]: Yes.

Vol. III Trial Tr. 293-94.

Petitioner asserts that the trial court's limitation of testimony by Ms. Pedro regarding threats from the victim's family violated his right under the Confrontation

Clause to confront and cross-examine witnesses called against him. Pet. at 10-14; Pet'r's OCCA Br. at 30-39. According to Petitioner, the jury was likely to conclude that Ms. Pedro was biased in favor of Petitioner, Ms. Pedro's boyfriend: "This bias would undercut the credibility of her testimony on cross-examination helping [Petitioner], but would bolster her unfavorable testimony on direct, including her claim that [Petitioner] had consumed no beers." Pet'r's OCCA Br. at 35. Petitioner argued to the OCCA that "[t]o counteract the inference of a bias favorable to him, Mr. Twobabies had an absolute right on cross-examination to explore and develop the evidence of the threats that Hamilton's family had made against [Ms. Pedro] in an attempt to influence her testimony." Pet'r's OCCA Br. at 35; *accord* Pet. at 12. According to Petitioner, denial of such cross-examination was not harmless beyond a reasonable doubt because (i) the evidence of Petitioner's guilt was "not overwhelming," and (ii) Petitioner had the right to develop evidence that threats from Mr. Hamilton's family had led Ms. Pedro to provide testimony favorable to the State on direct examination. Pet. at 12; Pet'r's OCCA Br. at 37-39.

2) Appeal

The OCCA rejected Petitioner's claim on the merits, holding:

Appellant complains that the trial court prevented him from inquiring into the details of threats made by the victim's family to State's witness, Alana Robin Pedro. Generally, the decision to allow or deny admission of evidence solely lies within the discretion of the trial court, if a proper objection and record are made. Absent a showing of an abuse of discretion, this court will not second guess the trial court's decision. . . . .

Appellant's main hurdle is the absence of the substance of the evidence that the trial court excluded. *See* 12 O.S.2011, § 2104 (when a

ruling is one suppressing evidence, the substance of the evidence must be made known). An Appellant cannot claim error in the exclusion of the evidence when the substance of the evidence is not apparent from the record. *Id.* In such a case, this Court is limited to plain error review. *Id.*

. . . .

Of course, Appellant wants this Court to assume that the threats were serious in nature and might have caused prejudice. This Court, however, will not presume error [or prejudice] from a silent record. Neither counsel at trial, nor counsel on appeal has provided sufficient record for this court to determine whether the omitted evidence was relevant or whether the omission caused harm to Appellant. We must, therefore, deny this proposition of error.

OCCA Op. at 5-6 (alteration in original) (citation omitted); *see also Douglas v. Workman*, 560 F.3d 1156, 1171 (10th Cir. 2009) ("[W]hen a state court applies plain error review in disposing of a federal claim, the decision is on the merits to the extent that the state court finds the claim lacks merit under federal law.").

After the OCCA's Opinion was issued, Petitioner filed a Petition for Rehearing, arguing that the OCCA's analysis of Ground Two "overlooked his constitutional Sixth Amendment confrontation clause claim." OCCA Order Denying Rehearing at 1. The OCCA denied rehearing and specifically repudiated overlooking the Confrontation Clause claim, stating:

The claim was denied, because Twobabies did not present an offer of proof regarding the barred evidence so that this Court could determine whether the trial court abused its discretion in limiting the inquiry into the potential bias of a witness, thus violating the right to confrontation. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

OCCA Order Denying Rehearing at 2.

3)  Analysis

In *Van Arsdall*, the Supreme Court discussed the guarantees afforded to a criminal

defendant by the Confrontation Clause:

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, means more than being allowed to confront the witness physically. Indeed, the main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*. Of particular relevance here, we have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Van Arsdall*, 475 U.S. at 678-79 (alterations, citations, and internal quotation marks

omitted).

Here, Petitioner's counsel cross-examined Ms. Pedro at trial, and specifically

obtained testimony from Ms. Pedro regarding the basic facts of threats by Niehhi

Hamilton's family. *See* Vol. III Trial Tr. 251-95. Thus, Petitioner was not cut off from

"all questioning about an event . . . that a jury might reasonably have found furnished the

witness a motive for favoring the prosecution in [her] testimony." *See Van Arsdall*, 475

U.S. at 679. Rather, Petitioner was permitted to present testimony that Ms. Pedro had

been threatened by Mr. Hamilton's family, was scared after the attack, and had not

wanted to talk to police but did make a written statement. Vol. III Trial Tr. 292-94. Even

assuming that questioning regarding the threats would have been "otherwise appropriate," Petitioner has not adequately shown through argument or citation to the record that allowing *further inquiry into the specific contents of these threats* would have exposed the jury to facts from which the jurors "could appropriately draw inferences relating to" Ms. Pedro's reliability, from which "[a] reasonable jury might have received a significantly different impression" of Ms. Pedro's credibility, or that otherwise would have affected the jury's verdict. *See Van Arsdall*, 475 U.S. at 680 (internal quotation marks omitted).

Petitioner has not demonstrated that the OCCA's rejection of this claim was unreasonable or contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Van Arsdall*, 475 U.S. at 678-80; *Delaware v. Fensterer*, 474 U.S. 15, 19-20 (1985); *cf. Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001) (noting that factors considered in evaluating alleged harm caused by trial court's limitation on cross-examination include "'whether the testimony was cumulative'" and "'the extent of cross-examination otherwise permitted'" (quoting *Van Arsdall*, 475 U.S. at 684)). Relief on Ground Two should be denied.

### C. Ground Three: Testimony Regarding Statements of Dona Littlehawk

Next, Petitioner asserts that certain statements made by Dona Littlehawk, the victim's wife and an eyewitness to the murder, which were introduced through the testimony of El Reno Police Detective James Ramey, constituted inadmissible hearsay and that their admission was "fundamental error" depriving Petitioner of his right to due process. Pet. at 14-17; Pet'r's OCCA Br. at 40-44.

1) Background

At trial, the State called Detective Ramey, who testified that he had been assigned to investigate the homicide of Niehhi Hamilton. Vol. II Trial Tr. 262-66. Detective Ramey recounted statements that Ms. Littlehawk had made to him at the police station both on the night of the homicide and three days after. Vol. II Trial Tr. 266-76. According to Detective Ramey, Ms. Littlehawk told him during the first interview that the persons involved were Petitioner's brother, Charles Hail or "Wookie," and a person she knew only as "Tim." Vol. II Trial Tr. 270-72. Ms. Littlehawk stated to Detective Ramey that Mr. Hail had attacked Mr. Hamilton, Tim had joined in after obtaining a knife from his own pocket, and Tim used the knife against Mr. Hamilton in a "slashing" manner. Vol. II Trial Tr. 271. Ms. Littlehawk described Tim as a shorter, stocky Indian male with a bowl-style haircut, which Detective Ramey testified did not fit the description of Mr. Hail. Vol. II Trial Tr. 272. Ms. Littlehawk did not indicate that anyone other than Tim had used a knife in the attack. Vol. II Trial Tr. 270-72.

Detective Ramey testified that after the first interview, he determined that "Tim" was Petitioner, Thomas Twobabies. Vol. II Trial Tr. 273. At Detective Ramey's request, Ms. Littlehawk returned to the police station. Vol. II Trial Tr. 273-75. After again stating that Tim had used the knife to stab Mr. Hamilton, Ms. Littlehawk identified Petitioner in a photographic lineup as the Tim to which she had referred. Vol. II Trial Tr. 273-76. Ms. Littlehawk again did not indicate that anyone other than Tim had stabbed Mr. Hamilton with a knife. Vol. II Trial Tr. 275-76. At no point during the questioning

of Detective Ramey on these matters did Petitioner's counsel object to admission of Detective Ramey's testimony. *See* Vol. II Trial Tr. 262-76.

2) Appeal

On appeal, Petitioner argued that Detective Ramey's testimony constituted improperly admitted hearsay that was "obviously extremely prejudicial" to Petitioner and cumulative to Ms. Littlehawk's own in-court denial of ever identifying Mr. Hail as having stabbed the victim. Pet'r's OCCA Br. at 40-44. The OCCA agreed to some extent that the statements were hearsay but denied relief on this claim, stating:

> In proposition three, Appellant claims that plain error occurred when Dona Littlehawk's out of court statements were introduced through the testimony of Police Detective James Ramey. Appellant admits that there were no objections to this testimony, thus error cannot be predicated on the introduction of these statements. 12 O.S.2011, § 2104. This Court, however, is not precluded from "taking notice of plain errors affecting substantial rights . . . ." *Id.* Again, this Court will remedy plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice."
>
> Here, Ramey testified about Littlehawk's statements which were substantially consistent with her testimony. She told Ramey that someone she knew as "Tim" stabbed Niehhi repeatedly. During the second interview, she picked out Appellant as the person she knew as "Tim." An argument can be made that the out of court statements were introduced to show why the Appellant was arrested and why someone named "Tim" was not.
>
> Appellant concludes that the introduction "went to the foundation of the case, deprived Appellant of a right which was essential to his defense, and therefore constituted plain error . . . ." The State concedes that the statements, offered for the truth of the matter asserted, constituted hearsay. The statements, however, did not rise to the level of plain error.
>
> After examining this issue, we consider that the introduction did not amount to plain error. Appellant's substantial rights were not violated by the introduction of these statements, and, in no way, did this evidence affect the outcome of this trial. Littlehawk testified and was subject to cross-examination. No one claims that either her testimony or her statements to

the police were false. Other witnesses told substantially the same story as Littlehawk. Although overused, the term "overwhelming evidence of guilt" is applicable in this case. The introduction of this evidence was not plain error, and this proposition must fail.

OCCA Op. at 6-7 (citations omitted).

3) Analysis

As noted by Respondent, the underlying claim of error in this ground is one of state law. Resp't's Resp. at 11-14. In a habeas action, a federal court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," such as the trial court's alleged misapplication of Oklahoma's hearsay statutes, Title 12, Sections 2801-2802 of the Oklahoma Statutes. *See Estelle*, 502 U.S. at 67-68. Rather, a federal habeas court examines whether the alleged error, such as the admission or exclusion of certain evidence, amounted to a constitutional violation in that it was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla*, 283 F.3d at 1212 (alteration and internal quotation marks omitted); *accord Estelle*, 502 U.S. at 75; *Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012); *see also Douglas*, 560 F.3d at 1171. Because the OCCA's application of plain error review was an adjudication on the merits that included the "same" fundamental fairness analysis as the federal due process test discussed above, 28 U.S.C. § 2254(d)(1) requires this Court to "defer to [the OCCA's] ruling unless it 'unreasonably applied' that" fundamental fairness test. *Thornburg v. Mullin*, 422 F.3d 1113, 1124-25

(10th Cir. 2005) (alteration omitted) (quoting 28 U.S.C. § 2254(d)(1)) (considering habeas claim based on allegedly improper admission of evidence following OCCA's application of plain error review to deny relief on corresponding state appellate claim); *see* 28 U.S.C. § 2254(d)(1).

Here, the OCCA's rejection of Petitioner's claim was not an unreasonable application of federal due process standards. The trial transcript and state-court record do not reflect that the admission of Detective Ramey's recounting of his interviews with Ms. Littlehawk rendered Petitioner's criminal trial fundamentally unfair or was unduly prejudicial to Petitioner. As noted by the OCCA, Ms. Littlehawk herself testified at trial and was subject to cross-examination by Petitioner. Vol. II Trial Tr. 6-40, 52-114. Ms. Littlehawk testified about being interviewed by police and her identification of "Tim" as the individual wielding a knife against her husband. Vol. II Trial Tr. 69, 85-87, 88-93, 108-12. On her redirect examination, Ms. Littlehawk denied having stated that Mr. Hail had participated in the stabbing (rather than just the attack) of the victim, and a review of her testimony regarding her questioning by police reflects that the testimony was consistent with the account provided by Detective Ramey. Vol. II Trial Tr. 109-12.

Further, two eyewitnesses besides Ms. Littlehawk testified that they saw Petitioner repeatedly stab Mr. Hamilton with a knife. *See* Vol. III Trial Tr. 220-22, 230-31, 238, 241 (testimony of Alana Pedro); Vol. IV Trial Tr. 77, 80 (testimony of Shawn Black). These witnesses did not identify anyone other than Petitioner as having or using a knife on November 19, 2010. Vol. III Trial Tr. 222; Vol. IV Trial Tr. 72, 74, 77-78. When Petitioner was arrested, he had an injury to his right hand; El Reno Police Detective

David Craig testified that the cut on Petitioner's hand "was indicative of somebody using a knife to where they lost the grip and it cut the webbing of their hand between their thumb and their finger." Vol. III Trial Tr. 60; State's Exs. 27, 28, 29, 30 (Doc. No. 11); *see also* Vol. III Trial Tr. 61-72, 74-77, 81-85.

As a result, even assuming the admission of Detective Ramey's testimony described above was inconsistent with state law, Petitioner has not shown that the OCCA's denial of relief on this claim unreasonably applied clearly established federal law or that the admission of such evidence resulted in the denial of fundamental fairness. *See Thornburg*, 422 F.3d at 1125; *Revilla*, 283 F.3d at 1212; *Ochoa*, 669 F.3d at 1144; 28 U.S.C. § 2254(d)(1). Habeas relief is not warranted on Ground Three.

### D. Ground Four: Admission of Evidence of Victim's Injuries

In Ground Four, Petitioner argues that the trial court improperly allowed "repetitious" and highly prejudicial evidence regarding the wounds sustained by Mr. Hamilton in the attack that caused his death, and that the introduction of such evidence resulted in a violation of Petitioner's Fourteenth Amendment due process rights. Pet. at 18-19. At trial, three of the State's witnesses testified to Mr. Hamilton's injuries: surgeon Dr. Ronald Squires, El Reno Police Detective David Craig, and medical examiner Dr. Chai Choi. Vol. III Trial Tr. 5-28 (testimony of Dr. Squires), 28-112 (testimony of Detective Craig), 112-70 (testimony of Dr. Choi). Petitioner objects to these witnesses' testimony, and also to the admission of multiple "color photographs of various parts of the victim's body as it appeared at the medical examiner's office." Pet. at 18; *see* Pet'r's OCCA Br. at 44-50; State's Exs. 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26.

1) Appeal

The OCCA denied relief on appeal:

> Appellant complains about the introduction of irrelevant and cumulative photographs and testimony concerning the victim's injuries. He complains that numerous photographs were shown; each showing a different wound. He also complains about the detailed description of the procedures utilized in an effort to keep the victim alive during surgery. Appellant complains that the evidence was substantially outweighed by the danger of needless presentation of cumulative evidence. The majority of this evidence drew no objection, thus we review for plain error only.
>
> All of the photographs were necessary to show the extent and nature of the wounds in order to show that the attacker had an intent to kill and to show the nature of the victim's death. Details about the efforts to save the victim's life were necessary to show that the death was the result of the extensive damage done by the stab wounds.
>
> Every element of the offense was at issue in this case, as it is in every criminal trial. The mere fact that a defendant chooses a trial, instead of entering a plea, admitting guilt, places the burden on the State to prove every essential element of a criminal charge at trial; this includes *corpus delicti*, intent, and manner of death. This Court will not bridle the State or dictate what evidence the State may use to prove its case, as long as the evidence comports with the rules of evidence. This evidence, we find, does comport with the rules of evidence. The probative value of the evidence, including photographs and testimony regarding the injuries and treatment thereof, was not substantially outweighed by any of the dangers outlined in 12 O.S.2011, § 2403. There is no error here, thus this proposition is denied.

OCCA Op. at 7-8 (footnote and citations omitted); *see also id.* at 8 n.2 (noting that there were no stipulations at trial as to the facts "that the victim was stabbed several times" and "died from those wounds").

2) Analysis

Petitioner's underlying claim of error on Ground Four is one of state law, which the OCCA rejected on plain error review. Accordingly, the undersigned reviews this

evidentiary objection to determine whether the OCCA unreasonably applied federal due process standards. *See Thornburg*, 422 F.3d at 1124-25.

As noted by the OCCA, there was no stipulation entered at trial as to either the stabbing or cause of death of the victim. Accordingly, the State was required to prove, *inter alia*, that Mr. Hamilton's death was caused by Petitioner and that Petitioner acted "with malice aforethought," in order to obtain a conviction for first-degree murder. *See* Okla. Stat. tit. 21, § 701.7(A); OR 566 (Jury Instruction No. 21); Okla. Unif. Crim. Jury Instr. No. 4-61 (2d ed. 1996 & Supps.).

The Tenth Circuit has previously addressed a similar argument involving similar circumstances:

> Mr. Thornburg pleaded not guilty. Even if he did not dispute the manner of death, the state still bore the burden to convince the jury that its witnesses, both eyewitnesses and experts, provided an accurate account of events. The photographs corroborated their accounts.
>
> Perhaps we would not have admitted such evidence had we been sitting on the trial bench, but our role is a very limited one. Reviewing the record under AEDPA's constraints, and in light of the probative value of the pictures, the gruesome nature of the crime, and the other evidence incriminating Mr. Thornburg, we cannot conclude that the OCCA acted contrary to or unreasonably applied federal law in concluding that their admission was proper.

*See Thornburg*, 422 F.3d at 1129.

Here, the disputed testimony and photographs likewise assisted the State in bearing its burden of proof. The presentation of multiple photographs was not without basis, given the assertion of approximately 20 stab wounds and that such wounds were across different parts of the victim's body. *See* State's Exs. 1, 13-26. The testimony of

Dr. Squires, Detective Craig, and Dr. Choi was relied upon by the State to introduce evidence of the depth and damaging nature of each wound and to describe the accompanying loss of blood, which are issues relevant to the intent and manner of death and not apparent from the photographs alone. *See* Vol. III Trial Tr. 11-14, 24, 45-58, 124-68. Finally, both the testimony and the photographs were relevant to the State's rebuttal of Petitioner's self-defense argument, as they reflected a disparity in both the quantity and severity of injuries suffered between the victim and Petitioner (and between the victim and Mr. Hail). *Compare, e.g.*, Vol. III Trial Tr. 11-14, 45-47, 124-68 (testimony regarding victim's multiple and deep stab wounds), *with* Vol. III Trial Tr. 60 (testimony regarding injury to Petitioner's right hand), *and* Vol. II Trial Tr. 238, 278-79 (testimony that Mr. Hail had only cuts to his hands).

The three witnesses' testimony and the photographs depicting the victim's injuries all bore a "logical connection" to the elements that the State was required to prove. *Thornburg*, 422 F.3d at 1129. The admission of these witnesses' testimony and the State's photographs therefore was not "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla*, 283 F.3d at 1212 (alteration and internal quotation marks omitted); *see also Ochoa*, 669 F.3d at 1144; *Douglas*, 560 F.3d at 1171. The OCCA's rejection of this claim was not an unreasonable application of clearly established federal law. *See Thornburg*, 422 F.3d at 1124-25, 1128-29; 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on Ground Four.

## E. Ground Five: Prosecutorial Misconduct

In this ground for relief, Petitioner alleges that the State's attorney committed prosecutorial misconduct by (i) improperly inviting the jury to speculate regarding the possibility of Petitioner receiving parole, and (ii) attempting to define reasonable doubt to the jurors during voir dire. Pet. at 20-23; Pet'r's OCCA Br. at 50-57.

1) Appeal

When Petitioner raised this proposition of error on appeal, the OCCA denied relief on the merits:

> In proposition five, Appellant complains about several instances of alleged prosecutorial misconduct. He first complains that the prosecutor disregarded the fact that Appellant would serve eighty-five percent of his life sentence (45[]years) before becoming eligible for parole, by arguing that the only way to guarantee that he would never get out on parole would be to sentence him to life without parole. Defense counsel objected, and the trial court admonished the prosecutor, telling him that he must not inflame the jury. Later similar argument was met with an objection and the trial court instructed counsel to refrain from discussing parole. The trial court denied Appellant's request to instruct the jury that they should not consider and speculate on matters of parole.

> During the deliberations the jury sent out a note asking if it might be possible for Appellant to be released before serving eighty-five percent, because of prison overcrowding. The trial court did not expand on the instructions already given.

> When the only possible punishment choices are life (with the possibility of parole) and life without parole, the prosecutor, as well as defense counsel, must be able to distinguish between the two punishments. The prosecutor's comments were proper in this respect. The comments did not misinform the jurors about the eighty-five percent rule as was the case in *Taylor v. State*, 2011 OK CR 8, ¶ 38, 249 P.2d 362, 377, where the prosecutor's argument indicated a person would only serve a little over thirty-eight years for a life sentence. Here the prosecutor merely indicated that, to guarantee no parole, a sentence of life without parole was prudent. Furthermore, the trial court properly curbed counsel's comments, and no error occurred which would warrant relief.

Next, Appellant complains about the prosecutor's *voir dire* questions regarding "proof beyond a reasonable doubt" as opposed to concerns jurors have about putting an innocent man in prison. He claims that the prosecutor diminished the standard of reasonable doubt in an attempt to define reasonable doubt.

Actually the prosecutor began by distinguishing between the different burdens in civil and criminal cases. The prosecutor, then, told the jurors that the burden was not beyond all doubt. There was an objection, and the trial court admonished the prosecutor to refrain from attempts to define reasonable doubt. He continued to distinguish between all doubt and reasonable doubt, and no other objections were made, thus we review for plain error only.

These types of comments are not error. *See Phillips v. State*, 1999 OK CR 38, ¶¶ 22-23, 989 P.2d 1017, 1028 (reasoning that such comments are used to dispel commonly held attitudes and often heard phrases; they are not impermissible attempts to define reasonable doubt). Appellant claims that the more damaging comments came later during the *voir dire* when a juror admitted that one of their biggest fears was sending an innocent person to jail. There were no objections during these comments, thus we review for plain error only. The juror was asked, by the prosecutor, if they could distinguish between reasonable and unreasonable doubt. The prosecutor went on to explain that it was the highest burden, but no higher. He asked if the juror would hold the State to their burden of proof, and nothing higher, even if the juror had the fear of sending an innocent person to jail. Here, the prosecutor was merely asking the jurors to follow the law, despite their own fears and preconceived notions.

No objections were made, and there is no error here. It is critical during *voir dire* to determine whether, despite personal beliefs, a juror can follow the law given by the trial court. *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). We find no error warranting relief in this proposition.

OCCA Op. at 9-11.

2) Analysis

  *a. Prosecutor's Comments Regarding Parole*

With respect to Petitioner's objection to the State's parole-related comments, the

undersigned reviews the entire proceedings to determine whether the remarks

"sufficiently infected the trial . . . to make it fundamentally unfair, and, therefore, a denial

of due process." *See Dodd*, 753 F.3d at 990 (omission in original) (internal quotation

marks omitted). This "high hurdle" "is even higher here because [Petitioner] must show

that the OCCA's rejection of his claim was unreasonable under § 2254." *Id.* at 991

(internal quotation marks omitted). Petitioner has failed to make this showing.

During closing argument, the prosecution stated:

> Once you all have found the defendant guilty of first degree murder, you're going to be left with a decision, and that's punishment. What do you do to the defendant? You've got two options. Life without parole, and life. And you were instructed that life means 45 years and that the defendant is going to have to serve 85 percent of that before he's *eligible for parole or to be released*.
>
> So the question for you, knowing to some degree with confidence when the defendant *could possibly get out* in a life sentence, ask yourself this question: When do you want the defendant back in our community? Do you want him back on the streets? Do you want someone that is capable of committing this type of crime out of prison, or do you want him in prison behind bars for the rest of his life?

Vol. V Trial Tr. 137 (emphasis added). At that point, defense counsel objected; the trial

court heard argument at the bench and sustained the objection. Vol. V Trial Tr. 137-39.

Upon resuming his argument, the prosecutor stated:

> The only way the 12 of you, with any confidence, can know that the defendant will serve the rest of his life in prison is if you sentence him to life without parole. Any other sentence does not guarantee that. In making that decision, think about the crime, think about what Niehhi went through, think about what the defendant is capable of doing. What does he deserve for this killing?

Vol. V Trial Tr. 139. Petitioner's counsel again objected, arguing at the bench that the

State was improperly suggesting that the only way Petitioner would stay in prison for the

rest of his life was if the jury chose life imprisonment without parole. Vol. V Trial Tr. 139-41. Petitioner's counsel requested that the jury be instructed that they are not to consider or speculate upon matters of parole. Vol. V Trial Tr. 140, 142. The trial court did not specifically rule on defense counsel's second objection but asked that the State "get away from this parole business"; the prosecutor concluded his closing argument without again discussing parole. Vol. V Trial Tr. 141-42.

During their deliberations, the jury sent the trial judge a note asking whether the State could decide to release someone serving a "normal" life sentence prior to completion of 85% of 45 years because of prison overcrowding. Jury Note (Doc. No. 11); Vol. V Trial Tr. 145. Neither attorney objected when the trial judge proposed to answer the jury's question by referring the jurors to the evidence, testimony, exhibits, and instructions already presented, which the judge did. Vol. V Trial Tr. 145.

As noted by the OCCA, the prosecutor's comments did not misstate the law: the State specifically and accurately noted that Petitioner would be "eligible" for parole or release and "could possibly" get out if granted parole. Vol. V Trial Tr. 137. The prosecutor refrained from discussing parole following defense counsel's renewed objection. Vol. V. Trial Tr. 142. In addition, the jury was properly instructed that a person convicted of first-degree murder is required to serve no less than 85% of the sentence imposed and that "[i]f a person is sentenced to life imprisonment, the calculation of eligibility for parole is based upon a term of forty-five (45) years, so that a person would be eligible for consideration for parole after thirty[-]eight (38) years and three (3) months." OR 582 (Jury Instruction No. 37); *see* Okla. Unif. Crim. Jury Instr. No. 10-

13B; *cf. Thornburg*, 422 F.3d at 1136 (finding that trial court remedied error caused by prosecutor's suggestion that defendant could be released if not sentenced to death by properly instructing jury that it could impose a sentence of life imprisonment or a sentence of life imprisonment without parole).

The mere fact that the jury sent a question to the trial judge does not render Petitioner's proceedings or convictions fundamentally unfair. Petitioner refers to the question as evidence of the jury's confusion, but Petitioner does not allege that the judge's response was erroneous or deprived Petitioner of requisite due process. *Cf. Mollett v. Mullin*, 348 F.3d 902, 907-08, 916 (10th Cir. 2003) (affirming grant of habeas relief on due process claim where the attorneys were not informed of jury's question and trial judge's response to jury's question did not explain the distinction between life imprisonment and life imprisonment without parole under Oklahoma law). "[A] question from the jury must be answered in open court and only after providing counsel an opportunity to be heard." *Smallwood v. Gibson*, 191 F.3d 1257, 1279 (10th Cir. 1999) (internal quotation marks omitted). Here, both prosecution and defense counsel were made aware of the jury's inquiry, but neither attorney requested further clarification, suggested a response, or objected to the judge's proposed response. *See* Vol. V Trial Tr. 145; *Smallwood*, 191 F.3d at 1280; *cf. Johnson v. Gibson*, 254 F.3d 1155, 1165 (10th Cir. 2001) (noting that a trial court may properly answer a jury's specific question regarding sentencing by referring jury to court's prior instructions); *United States v. Powell*, 226 F.3d 1181, 1193 (10th Cir. 2000) (approving trial court's decision to refer jury to prior instructions).

The prosecutor's statements did not result in fundamental unfairness or a denial of due process, and the OCCA's rejection of this prosecutorial misconduct claim is not unreasonable or contrary to governing federal law under 28 U.S.C. § 2254(d)(1).

### b. Prosecutor's Comments Regarding Standard of Proof

Petitioner next alleges that the State improperly attempted to define the reasonable doubt standard of proof to the jury and to shift the burden of proof onto the defense. *See* Pet. at 22-23; Pet'r's OCCA Br. at 54-57. The undersigned therefore examines whether Petitioner was "effectively deprived" of his "'specific constitutional right'" of "'the presumption of innocence.'" *Morris v. Workman*, 382 F. App'x 693, 696 (10th Cir. 2010) (quoting *Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003)); *Dodd*, 753 F.3d at 990-91 (analyzing claim that State improperly characterized its burden of proof to determine if the misconduct "effectively deprived the defendant of a specific constitutional right").

In support of his contention regarding how the standard of proof was defined to the jury, Petitioner points to the State's questioning during voir dire. Pet. at 22-23; Pet'r's OCCA Br. at 54-57. During the jury selection proceedings, the prosecutor explained that the State's burden was beyond a reasonable doubt, which is "not beyond all doubt." Vol. I Trial Tr. 82. The trial court overruled defense counsel's contemporaneous objection but asked the State "to stay away from any definitions at this point in time as far as what reasonable doubt is." Vol. I Trial Tr. 82-83. The prosecutor asked several jurors their opinion on the beyond-a-reasonable-doubt standard and asked whether anyone felt that this burden was too high. Vol. I Trial Tr. 87. Counsel for the

State later asked the jurors whether they would be able to separate doubt from unreasonable doubt. Vol. I Trial Tr. 132. The prosecution also questioned one prospective juror regarding whether his concern about putting an innocent person in jail would prevent him from finding Petitioner guilty despite the State meeting its burden:

> JUROR RILEY: I thought it was interesting, one of the questions that was asked earlier, about greatest fear. And that was one of the things that, you know, when I got my summons for jury duty, my greatest fear has always been sending an innocent person to jail. . . . .
>
>  . . . .
>
> [STATE]: . . . . Do you have such a concern about that that that would interfere with your duty as a juror? Because one of the things you heard is that we know that the burden that the State has is beyond a reasonable doubt. It's not beyond all doubt. It's beyond a reasonable doubt. Do you think that you, as a juror, would be able to distinguish between, in your mind, what's reasonable and what's not reasonable?
>
> JUROR RILEY: Yes, I would. . . . .
>
> [STATE]: The burden that the State has is one that I have set. I recognize it. In this system, it's one that we have to have. If we are going to put somebody's life in jeopardy, meaning that we could put them in prison the rest of their life, the burden should be as high as it is, beyond a reasonable doubt. But it shouldn't be higher than that. And I wouldn't want your concern that you're going to put an innocent person in jail to be more important than you following the law.
>
> JUROR RILEY: Sure.
>
> [STATE]: Which is if we prove, the State proves, beyond a reasonable doubt, which is what the law requires, if we prove that, you would still be able to find the defendant guilty, even though you have this concern about putting an innocent man in jail?
>
> JUROR RILEY: Absolutely.

Vol. I Trial Tr. 212-13; *see also id.* at 213-14.

The prosecutor's comments that the beyond-a-reasonable-doubt standard is "not beyond a reasonable doubt," and "shouldn't be higher than" the standard actually is, were

an accurate reference to the State's burden of proof and not an attempt to mischaracterize or negate that burden. *See Thornburg*, 422 F.3d at 1130 ("[T]o state that 'beyond a reasonable doubt' does not mean beyond 'a shadow of a doubt or all doubt' was not a constitutional violation."); *cf. Gordon v. Ward*, 118 F. App'x 434, 436 (10th Cir. 2004) (finding that OCCA's denial of relief on plain error review of habeas petitioner's claim that the prosecutor had improperly attempted to define "beyond a reasonable doubt" for jury by stating that "'reasonable doubt' does not mean 'beyond a shadow of a doubt' or 'beyond all doubt'" was not unreasonable or contrary to federal law or an unreasonable determination of the facts in light of the evidence presented); *Walton v. Keith*, No. CIV-09-281-F, 2010 WL 354131, at *13-15 (W.D. Okla. Nov. 25, 2009) (report and recommendation) (finding that prosecutor's remarks as to what the reasonable-doubt standard does *not* mean did not attempt to negate the presumption of innocence), *adopted*, 2010 WL 354131, at *1 (W.D. Okla. Jan. 27, 2010), *and appeal dismissed*, 416 F. App'x 740 (10th Cir. 2011).

The prosecution's additional comments likewise did not attempt to improperly define reasonable doubt or shift that burden to Petitioner. The State distinguished the criminal standard of proof from that used in civil cases but did not attempt to define the higher standard for the jurors. *See* Vol. I Trial Tr. 82-83, 87, 132. Further, the State's questioning of Juror Riley was reasonably tailored, rather than overly instructive, and focused upon the prosecution's material inquiry of whether, despite that juror's personal beliefs, he would be able to follow the law. *See* Vol. I Trial Tr. 212-13; *Morgan*, 504 U.S. at 729-30 ("[P]art of the guarantee of a defendant's right to an impartial jury is an

adequate *voir dire* to identify unqualified jurors."). In that questioning, the prosecutor repeatedly emphasized that the burden was the State's alone to carry. Vol. I Trial Tr. 212-14.

Relief therefore should be denied on Petitioner's claim of deprivation of his right to the presumption of innocence. *See Thornburg*, 422 F.3d at 1130; *Gordon*, 118 F. App'x at 436; *Delgado v. Barreras*, No. 97-2007, 1997 WL 785525, at *2 (10th Cir. Dec. 22, 1997) (rejecting habeas claim based on prosecutorial misconduct where "the prosecutor's remarks were not a direct statement on the presumption of innocence" and "the defense made no objection," and therefore any prejudice was not amplified by an objection being overruled); 28 U.S.C. § 2254(d)(1), (2). In addition, Petitioner fails to show that the prosecutor's statements during voir dire rendered Petitioner's trial void of due process or fundamentally unfair. *See Dodd*, 753 F.3d at 991 (noting that failure to object is relevant to assessment of fundamental unfairness); 28 U.S.C. § 2254(d)(1).

### F. Ground Six: Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial counsel was ineffective for failing to adequately object to the testimony, evidence, and the prosecutorial voir dire comments outlined above in Grounds Three, Four, and Five. Pet. at 24-25; Pet'r's OCCA Br. at 57-58.

1) *Strickland* Standard

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are analyzed under the familiar, two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, [Petitioner] must show that counsel's performance was deficient." *See id.* at 687. To satisfy this prong, Petitioner

must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *See id.* at 687-88 (internal quotation marks omitted). There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

With respect to the second prong of the analysis, Petitioner must show that *but for* counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Richter*, 562 U.S. at 111-12 (citations and internal quotation marks omitted).

2) Appeal

The OCCA rejected this claim on the merits, holding:

> Appellant claims that counsel was ineffective for failing to object to evidence and argument, which he has raised under propositions of error in his propositions three, four and five. We found, in discussing proposition

three, that the hearsay evidence did not constitute plain error. We further find that the introduction of this evidence did not prejudice Appellant in any adverse way. We find, therefore, that Appellant cannot show that he was prejudiced by counsel's failure to object to this evidence. Thus his claim of ineffective assistance cannot meet the second, prejudice, prong of Strickland.

In discussing propositions four and five, we found that the propositions contained no error. Had the propositions been preserved by proper objections, our finding would be the same. Appellant cannot show that counsel's conduct fell outside the range of competent assistance.

OCCA Op. at 11-12 (citing *Strickland*, 466 U.S. at 689, 694).

3) Analysis

Applying the law as outlined above to the facts of Petitioner's case, Petitioner was not prejudiced by his trial counsel's failures with respect to the issues raised in Grounds Three, Four, and Five. As outlined above in Parts III.C, III.D, and III.E(2)(b), Petitioner's substantive propositions of error based upon Detective Ramey's testimony, the admission of evidence regarding the victim's injuries, and the State's comments regarding the beyond-a-reasonable-doubt standard are all without merit. Therefore, "separate consideration of the associated ineffective assistance claims is unnecessary." *Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002). The record and Petitioner's arguments, considered together with the totality of the evidence before the jury, do not support a conclusion that but for his trial counsel's alleged errors, there is a reasonable probability that the result of the proceeding would have been different. *See supra* Parts III.C, III.D, III.E(2)(b); *Strickland*, 466 U.S. at 694. Therefore, Petitioner cannot show that his trial counsel's performance was prejudicial: there is no "substantial" likelihood of a different result. *See Richter*, 562 U.S. at 112; *cf. Jones v. Gibson*, 206

F.3d 946, 959 (10th Cir. 2000) (holding that appellate counsel is not ineffective for failing to raise a meritless claim). Because Petitioner has failed to demonstrate that he was prejudiced by his trial counsel's performance, the undersigned need not address whether counsel's performance was deficient with regard to his suppression efforts. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. For the reasons outlined above, the OCCA's rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*'s governing standard. *See Strickland*, 466 U.S. at 687-95; 28 U.S.C. § 2254(d)(1); OCCA Op. at 11-12. Relief on this basis should be denied.

### G. Ground Seven: Cumulative Error

In his final argument, Petitioner claims that the accumulation of trial errors raised in Grounds One through Six deprived him of a fundamentally fair trial. *See* Pet. at 26; Pet'r's OCCA Br. at 59. The OCCA denied this claim of error on the merits, holding: "We have found no error in Appellant's propositions, thus the cumulative error argument has no merit." OCCA Op. at 12.

> In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the

constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (internal quotation marks omitted). As that language implies, "[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors.

*Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). Under such review a federal court also considers the impact of any constitutional claims that "have been individually denied for insufficient prejudice" because to exclude such claims from consideration "'would render the cumulative error inquiry meaningless, since it [would] . . . be predicated only upon individual error already requiring reversal.'" *See Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (alterations in original) (quoting *Willingham v. Mullin*, 296 F.3d 917, 935 (10th Cir.2002).

The Tenth Circuit has recognized that a circuit split exists regarding whether the requirement to conduct a cumulative-error analysis is clearly established federal law under 28 U.S.C. § 2254(d)(1). *See Cole v. Trammell*, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014). However, the Tenth Circuit also notes that its precedent "may very well signal where our court has come down on the issue—*viz.*, that cumulative-error analysis is clearly established law." *See id.* (internal quotation marks omitted); *cf. Bland v. Sirmons*, 459 F.3d 999, 1029 (10th Cir. 2006) ("Because the OCCA concluded that the cumulative errors did not deprive [the petitioner] of a fair trial, we must defer to its ruling unless it constitutes an unreasonable application of the cumulative-error doctrine.").

Having considered *Cole*'s forecast, the undersigned concludes that that the OCCA's decision on Petitioner's cumulative-error claim was not unreasonable or

contrary to such clearly established federal law. As outlined above, no *constitutional* errors were present in the state-court proceedings, including with respect to Petitioner's claims where it is recommended that relief be denied based upon an insufficient showing of prejudice, *see supra* Parts III.C, III.D, III.F. Lacking two or more errors to accumulate, Petitioner cannot show a violation of fundamental fairness. *See Littlejohn*, 704 F.3d at 868; *Moore*, 153 F.3d at 1113. Relief on this basis should be denied.

## RECOMMENDATION

As detailed above, it is recommended that the Petition for Writ of Habeas Corpus (Doc. No. 1) be denied. If this recommendation is accepted, Petitioner's pending motion for evidentiary hearing (Doc. No. 15) should be denied. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by August 21, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 31st day of July, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE